UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JAMES JACONO, | : | Bankruptcy No. 05-15384DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Motion of the Department of Housing and Urban Development ("HUD") for Relief from Automatic Stay (the "Motion") to allow a judicial proceeding pending in the United States District Court for the Eastern District of Pennsylvania to proceed. For the reasons that follow, the Motion will be granted.

**BACKGROUND**

The Debtor resides in certain property located at 4178 Oliver Lane, Boothwyn, Pennsylvania (the "Property"), a residential property purchased in the 1970's by his father William Jacono ("William"), who died on October 11, 2002. On June 11, 1993 William executed an Adjustable Rate Note (Home Equity Conversion) secured by an Open-End Mortgage on the Property which HUD took by assignment on February 4, 2000

(the "HECM").[1]  Exhibit HUD-2.  The financing transaction is commonly referred to as a reverse mortgage in that the lender either advances in a lump sum or in installments a sum of money based on the age of the borrower, the interest rate at closing and the equity in the real estate.  See htpp://www.reversemortagelenders.org.  The unique feature of a reverse mortgage loan is that no payment is due until the borrower no longer owns or occupies the home as his principal residence.  Id.  Subsequent to William's death, a Home Equity Conversion Mortgage Payoff Statement was transmitted to the Estate of William Jacono indicating a payoff amount of $185,951.59 as of April 18, 2005.  HUD has filed a secured proof of claim in the bankruptcy case in this amount.  Exhibit HUD-1.

While the record is silent as to when HUD learned of William's death, it apparently made a demand for full repayment prior to April 18, 2005 because in July 2003 HUD commenced a non-judicial proceeding and then when it was challenged, initiated United States v. William Jacono, Deceased, any Heirs, Executors or Assigns of Said William Jacono, C.A. No. 04- 3478 (E.D. Pa. 2004) seeking judicial foreclosure of the Property (the "District Court Action"). Motion ¶ 9, Answer ¶ 1.  Debtor defended the District Court Action, contending that the loan was invalid because William had transferred the Property to a trust for Debtor's benefit before the loan was made. HUD filed a motion for summary judgment in the District Court Action and after the motion was fully briefed, Debtor filed the instant Chapter 13 case.  The filing stayed further proceedings in the District Court Action.

---

[1] Known as a HECM loan, it is funded by a mortgage lender, bank, credit union or savings and loan association and insured by the FHA.  Borrowers must be 62 and older and are able to convert the equity in their homes into monthly streams of income to be repaid when the homes are no longer occupied.  See  htpp://www.hud.gov

-2-

Debtor contends that notwithstanding his view that the HECM is invalid, he is prepared to treat it as a secured claim in his Chapter 13 plan (the "Plan"). Under his proposed Plan, Debtor, who is 70 years old, would secure another HECM to pay off the existing HECM and the claims of the Delaware County Tax Claims Bureau. Recognizing that the proceeds of such a loan would be insufficient to pay these claims in full, he looks to an eminent domain claim arising out of a property at 2811 W. 2nd Street, Chester (the "Eminent Domain Recovery") to satisfy the balance. Payment from these sources shall be made to the Chapter 13 trustee by March 31, 2006. However, if he is unsuccessful in doing so by that date, he will sell the Property by March 31, 2007. Exhibit HUD-1. Pending the occurrence of one of these events, Debtor proposes to pay $10 per month to the Chapter 13 trustee for 36 months which is his sole disposable income since he is retired and receiving only social security.

Debtor's schedules evidence secured claims of $507,418.60.[2] In addition to HUD's claim of $185,951.59,[3] there are scheduled secured claims of the Delaware County taxing authority ("County Claim") and a "potential lien" claim by William Jacono Realty, Inc. ("Realty") in the amount of $310,418.60. In addition to his treatment of HUD, the Plan treats

---

[2] While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

[3] The Debtor has scheduled it as a disputed secured claim of $180,000. However, the only dispute raised was whether the mortgage was valid. The Debtor does not contend the amount is incorrect.

-3-

the County Claims, Class Three, as being paid directly by arrangements outside the Plan, "although it is expected that these creditors' claims against the Home will be paid out of the proceeds of the refinancing or sale" Id.  Debtor testified that he did not have money to pay his real estate taxes for the first time in 2004 and believed the obligation was around $5000. This testimony is consistent with the proof of claim filed in the amount of $5587.56.[4] As to the Realty claim, classified as Class Four, the Debtor indicates it will be treated "outside of the plan." Id.

In support of the feasibility of the Plan, Debtor produced a memo dated July 11, 2005 from Karen Curry, a representative of Financial Freedom ("Financial"), which indicated that as of that date, the amount available under the HECM program for the Property at the current rate of interest was $147,841.  This memo from Financial, a broker of reverse mortgages, is Debtor's sole document relating to the anticipated new HECM and represents Debtor's latest communication about this subject. Debtor acknowledged that he had no pending application for a loan, an application made several years ago having been abandoned when the lender would not advance more that $110,000 based on the current interest rate.

Debtor also elicited the testimony of Dennis Dunn, Esquire ("Dunn"), the lawyer pursuing the Eminent Domain Recovery, to support the feasibility of the Plan insofar as it is to be funded by the potential proceeds from the eminent domain case.  Dunn testified that he was retained in early 2004 to represent William Jacono Realty, Inc. ("Realty"),

---

[4] Delaware County has filed two proofs of claim. The second and larger proof of claim relates to another property which Debtor stated relates to the house he lived in with his former wife until 1978 and which is not contemplated to be paid under the Plan.

-4-

a corporation owned by the William Jacono Trust[5] as to which debtor is the beneficiary. In 2001 the Pennsylvania Department of Transportation ("PennDOT") condemned a property owned by Realty pursuant applicable state law. While the next step after the taking was to have the condemned property valued, Realty has not filed the requisite petition for review which would fix the value of the property.[6] Dunn explained he needed to secure an appraisal first and while he had hired an appraiser within the last month or so, the appraiser would not be able to produce his report until mid to late September. In addition to PennDOT's actions against Realty, Realty filed a summons in 2004 to preserve its claim for a *de facto* taking or trespass in connection with additional property taken in addition to the condemned property. The complaint has not been filed.

HUD contends that the Debtor's Plan cannot be confirmed. The ability to secure another HECM in the absence of equity in the Property, according to HUD's counsel, is problematic and the Debtor has not even applied to secure this financing. The contemplated proceeds of $147,000 from a new HECM could not pay HUD's claim of $185,000 as well as the County Claim of $5,000 plus interest and costs. The Eminent Domain Recovery, HUD argues, is too speculative to fill in the gap. To allow this bankruptcy case to proceed, would be to force HUD, whose debt was due in 2002, to wait until the earliest 2006 but more likely 2007 to receive payment without any assurance that it would be paid.

**DISCUSSION**

---

[5] Dunn could not recall the name of the trustee.

[6] Dunn did not know who the prior attorneys were or why they took no action to pursue Realty's claims.

The automatic stay of § 362 is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors by stopping all collection efforts, all harassment and all foreclosure actions while the debtor attempts a repayment or reorganization plan. H.R.Rep. No. 595, 95th Cong., 1st Sess 174-75 (1977); S.Rep.No. 989, 95th Cong. 2d Sess. 49-50 (1978). However, if there is no realistic repayment plan being proposed and the stay merely obstructs a creditor from the exercise of its valid contractual remedies, the stay should be lifted. E.g. In re Brown, 290 B.R. 415 (Bankr. M.D. Fla. 2003) (cause exists to lift stay to allow mortgage foreclosure sale purchaser to complete his eviction given lack of evidence that she could feasibly perform under a Chapter 13 plan).

Generally, the decision whether to modify, condition, or annul the bankruptcy stay under Section 362(d) is within the discretion of the bankruptcy court. See Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986); In re Colonial Center, Inc., 156 B.R. 452, 459 (Bankr. E.D. Pa. 1993). The determination is made by examining the totality of the circumstances. Matter of Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985); Colonial Center, 156 B.R. at 459.

Relief from stay under § 362(d)(1) may be granted for "cause, including the lack of adequate protection of an interest in property of such party in interest." The party seeking relief from the stay has an initial burden to demonstrate cause for relief. In re Ward, 837 F.2d 124, 128 (3d Cir. 1988); In re Purnell, 92 B.R. 625, 631 (Bankr. E.D. Pa. 1988); In re Kim, 71 B.R. 1011, 1015 (Bankr. C.D. Cal. 1987). This follows from the principle that a

party seeking to alter the status quo has some initial burden to justify the relief sought. See generally In re Fries, 68 B.R. 676, 684-85 (Bankr. E.D. Pa. 1986).

> FSG Service Corp. v. Kim (In re Kim) defined this initial burden as follows:
>
>> Where, as here, relief from stay is grounded in cause, based upon lack of post-confirmation maintenance payments, the moving creditor must establish a prima facie case supporting the cause for relief from the stay. Such a prima facie case must include: (1) a showing of an obligation owing by the debtor to the creditor; (2) a valid security interest as to which relief from the stay is sought...; (3) the cause justifying relief from stay, such as post-petition or post-confirmation default.

71 B.R. 1101, 1016 (Bankr. C.D. Cal. 1987), overruled in part on other grounds by Lomas Mortgage USA, Inc. v. Elmore (In re Elmore), 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988) (citation omitted).

HUD has presented evidence that it has a mortgage on the Property which William granted to secure a loan which came due when he died in 2002.[7] Debtor continues to live in the Property without making any payment and proposes to have the right to continue to do so until 2007. The secured obligations on the Property exceed the $175,000 scheduled value of the Property, see Schedule D, an undersecured position which would grow by reason of Debtor's failure to pay real estate taxes. Debtor's Schedule J does not include any real estate tax expense going forward and thus it appears that his admitted inability to pay the 2004

---

[7] Debtor has maintained his litigation position that William did not own the Property when he gave the mortgage having previously transferred it to a trust. This issue is before the District Court and Debtor will have the opportunity to pursue it if stay relief is granted. However, Debtor filed this case to treat the HECM as a secured obligation under a Chapter 13 plan which presents for this Court the question of whether a feasible plan has been proposed. Needless to say, if Debtor's sole contention is that the mortgage is invalid, I would have entered a bench order lifting the stay to allow the District Court to decide the pending motion.

-7-

taxes would continue during the Plan period. HUD has met its initial burden by this proof, and the burden then shifts to the Debtor to establish the absence of "cause." 11 U.S.C. § 362(g). See generally Nazareth National Bank v. Trina-Dee, Inc., 731 F.2d 170, 171 (3d Cir. 1984).

In this case, the Debtor contends that HUD is adequately protected by his proposed Chapter 13 plan. A viable plan of reorganization which meets a debtor's statutory obligations to the secured creditor may defeat a motion for relief. In re Philadelphia Consumer Discount Co., 37 B.R. 946, 949 n.9 (E.D. Pa. 1984); In re Skipworth, 69 B.R. 526 (Bankr. E.D. Pa. 1987). For the reasons that follow, however, I agree with HUD that the Debtor's proposed Plan is far too speculative to compel HUD to forbear until 2007 with no payment while its collateral diminishes by reason of the growing tax liens.[8]

There are two components to Debtor's Plan, both of which must be accomplished for the Plan to succeed. First, Debtor must be able to refinance the Property with another HECM. Debtor has not applied for a new HECM although he has obtained an estimate of a loan amount that might be available to him. Notably the assumptions that the broker has utilized to calculate that loan are unstated. It seems unlikely that the loan broker is aware of the existing liens on the Property. Since the proceeds of a new loan which Debtor's own

---

[8] While HUD complains of the additional years it would be deferred by the curing of the defaulted HECM under Chapter 13, neither it nor Debtor cited any authority to address the permissible treatment of a reverse mortgage under Chapter 13. My research revealed one case, In re Wilcox, 209 B.R. 181 (Bankr. E.D. N.Y. 1996), that holds that a reverse mortgage is no different than any other matured loan that can be paid over the life of a plan. Notably the debtor was paying property taxes and insurance as they came due and the lender's position was not deteriorating. Moreover, the debtor did not attempt to defer payments with a new HECM but rather to amortize the loan over the plan period.

-8-

evidence fixes at $147,841.00 will not pay off the existing mature HUD obligation (including continuing accruing interest), tax liens (also accruing interest) and closing costs, it is unreasonable for Debtor to expect to secure such financing without first raising enough supplemental funds which, with the new HECM proceeds, would retire the existing HECM. Absent supplemental funds, the lender would be taking a second position to a defaulted mortgage, an unlikely scenario. Thus, I will assume that the second prong of Debtor's Plan, i.e., the Eminent Domain Recovery, must be realized contemporaneously with any new loan being advanced. I next consider the likelihood of this occurrence.

According to the testimony of Dunn, nothing will happen to advance the Eminent Domain Recovery until an appraisal is secured. He expects that to occur by the end of September. At the present juncture Dunn does not even know what amount he can expect to recover if his own value of the taking prevails and whether that amount will be sufficient to reduce the HECM to an amount that could be paid off with a new loan. Once he gets that appraisal, he first has to file a petition to fix value. Dunn indicated that he hoped he could negotiate a settlement but PennDOT was very difficult and he was not optimistic. With regard to the second action which Realty has commenced against PennDOT by summons, he has yet to file a complaint.

More significantly, the property that was taken in 2001 was owned by Realty, not Debtor. Realty, in turn, is owned by a trust. The trustee, not Debtor who is the beneficiary, controls the litigation and has done little to advance the realization of these proceeds. It appears that the trustee does not have the same incentive to move this forward

that Debtor has. Finally the Debtor's Schedules reflect a secured obligation in the amount of $310,418.60 in favor of Realty which the Plan states will be paid "outside the plan." [9] Debtor was not questioned about this claim. Query how the Debtor expects Realty to release the eminent domain proceeds to him when he has this obligation to it. For all of these reasons, the prospect that Debtor will receive an Eminent Domain Recovery in an amount sufficient to secure a new HECM to retire the existing defaulted HECM by March 31, 2006 is truly speculative. Nor does the back up provision that contemplates a sale of the Property by March 31, 2007 offer a viable option since the value of the Property is significantly less than the amount of the liens. Indeed that provision, which stretches out the period of non-payment for HUD to a total of five years from the date the loan became due, makes the Plan even more unfavorable to HUD.

The automatic stay is intended to strike a balance between the rights of creditors and the debtor's need for breathing room in order to rehabilitate or liquidate in an orderly manner. See generally Community Federal Savings and Loan Association v. Craghead (In re Craghead), 57 B.R. 366, 369 (W.D. Mo. 1985). When the rehabilitation, in this case the Debtor's desire to save the Property his father intended to pass to him, obstructs a creditor's exercise of its rightful remedies with no adequate protection being offered and there is a likelihood that the creditor's position will worsen, that balance tips too far in the Debtor's favor. Accordingly, the Motion shall be granted.

---

[9] HUD points out that the Schedules do not reflect any expectation of proceeds from the eminent domain case. I note that the Debtor has scheduled under "Contingent and Non-contingent Interests in Estate of Decedent, " that he is "Beneficiary of Trust James F. Jacono Ira for William Jacono." Schedule B. That interest is exempted under Schedule C. Exhibit HUD-1.

An Order consistent with this Memorandum Opinion shall be entered.

                                      DIANE WEISS SIGMUND
                                      Chief U.S. Bankruptcy Judge

Dated:  August 16, 2005

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JAMES JACONO, | : | Bankruptcy No. 05-15384DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 16th day of August 2005, upon consideration of the Motion of the Department of Housing and Urban Development for Relief from Automatic Stay (the "Motion") to allow a judicial proceeding pending in the United States District Court for the Eastern District of Pennsylvania (the "District Court Action") to proceed, after notice and hearing, and for the reasons stated in the accompany Memorandum Opinion;

It is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED**.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA 19073

Patricia D. Gurgin, Esquire
Office of the U.S. Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

-2-